**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
WESTERN DIVISION**

GOVERNMENT EMPLOYEES INSURANCE COMPANY                              PLAINTIFF

VERSUS                              CIVIL ACTION NUMBER: 5:06cv170-DCB-JMR

DON SALTOU, HUBERT DUCKWORTH, and
PROGRESSIVE GULF INSURANCE COMPANY                                 DEFENDANTS

**OPINION AND ORDER**

This cause comes before the Court on the plaintiff's Motion for Summary Judgment [**docket entry no. 19**]. Having carefully considered said Motion, memoranda in support and opposition thereof, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

**I. BACKGROUND AND PROCEDURAL HISTORY**

On June 24, 2006, Defendant Don Saltou was driving a 2003 Ford Focus (VIN no. IFAFP33P03W293390) in the westbound lane of Mississippi Highway 462 in Warren County, Mississippi, attempting to make a left turn onto a private drive. Defendant Hubert Duckworth, operating a motorcycle in the eastbound lane of Mississippi Highway 462, collided with the vehicle Saltou was driving. Both the Focus and the motorcycle were damaged in the crash, and Duckworth incurred personal injuries.

On the date of the accident, plaintiff Government Employees Insurance Company ("GEICO") and Saltou were parties to an

automobile insurance policy (no. 2006-80-35-36) ("Policy"), and defendant Progressive Gulf Insurance Company ("Progressive") was the automobile insurance carrier for Duckworth.

On November 28, 2006, GEICO filed its Complaint for Declaratory Judgment [docket entry no. 1] against Saltou with this Court, asserting diversity of citizenship jurisdiction based upon 28 U.S.C. § 1332 and asking the Court to declare the rights and legal relations of the parties under the Policy pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57.  (Compl. 1.)

On December 18, 2006, Duckworth executed in favor of Progressive a limited assignment of his rights against Saltou and/or GEICO which arose from the June 24, 2006 accident.  (Mot. Summ. J. Ex. J.)  On January 16, 2007, GEICO filed its Amended Complaint for Declaratory Judgment [docket entry no. 6], in which it joined Duckworth and Progressive as defendants in this action.

Following discovery, the plaintiff filed a Motion for Summary Judgment [docket entry no. 19] on October 15, 2007.  Progressive offered a Response [docket entry no. 22] in opposition to GEICO's Motion on November 20, 2007, and a Supplemental Response [docket entry no. 30] on February 12, 2008.[1]  GEICO filed its Rebuttal [docket entry no. 32] to these responsive documents on February 20, 2008.  The plaintiff's Motion for Summary Judgment is now before

---

[1] Neither Saltou nor Duckworth ever responded to GEICO's Motion, nor did they join in Progressive's responses thereto.

the Court.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[2] The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). But the nonmovant must

---

[2] "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (internal citations omitted).

"do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  Moreover, "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment.  Anderson, 477 U.S. at 252, 106 S. Ct. at 2512.  The nonmovant must instead come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Summary judgment is properly rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552.

### III. ANALYSIS

*A. The Parties' Arguments*

1. GEICO

The plaintiff contends that the 2003 Ford Focus which Saltou was driving was not a covered automobile under the Policy when the accident occurred on June 24, 2006.  Specifically, GEICO posits that the Focus was not an "owned auto" or a "non-owned auto" as contemplated by the unambiguous terms of the Policy.  Accordingly, GEICO neither owes a duty to indemnify or defend Saltou should Duckworth and/or Progressive file a claim to collect on the liability coverage portion of the Policy, nor must it compensate

Saltou for the property damage to the Focus.

2. Progressive

Progressive points out that Saltou asserts he attempted to add the Focus to the Policy prior to June 24, 2006. In addition, relying upon Wille v. Courtney, 943 So. 2d 515 (La. App. 5th Cir. 2006), Progressive urges that the Focus was not an owned auto under the Policy until Saltou actually took possession of the car from his step-daughter and intended to take an ownership interest in the car on or about June 20, 2006. Therefore, so goes the argument, because the Focus was a newly-acquired vehicle, the Policy gave Saltou thirty days to add the Focus to the Policy. Accordingly, because GEICO admits Saltou did request that the Focus be added to the Policy on July 5, 2006, the Focus was retroactively afforded coverage under the Policy on the date of the accident.

*B. Applicable Law*

As is the situation in this case, a federal court sitting in diversity is obligated to apply state substantive law. Times-Picayune Pub. Corp. v. Zurich Am. Ins. Co., 421 F.3d 328, 334 (5th Cir. 2005) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). The parties do not dispute that the substantive law of Mississippi is applicable to this matter.

*C. Terms of the Policy*

Section III, the Physical Damages Coverage portion of the Policy, reads in pertinent part:

> Collision
> 1. We will pay for **collision loss** to the **owned** or **non-owned auto** for the amount of each **loss** less the applicable deductible.

(Policy 8.)  The **"DEFINITIONS"** subsection of Section III of the Policy defines the terms "non-owned auto" and "owned auto" as follows:

> 7. **"Non-owned auto"** means a **private passenger**, **farm** or **utility auto** or **trailer** not owned by or furnished for the regular use of either **you** or **your relatives**, except a **temporary substitute auto**. **You** or **your relative** must be using the auto or trailer within the scope of permission given by its owner. An auto rented or leased for more than 30 days will be considered as furnished for regular use.
>
> 8. **"Owned auto"** means:
>    (a) any vehicle described in this policy for which a specific premium charge indicates there is coverage;[3]
>    (b) a **private passenger**, **farm** or **utility auto** or a **trailer,** ownership of which is acquired by **you** during the policy period; if
>    > (i)  it replaces an **owned auto** as described in (a) above, or
>    > (ii)  we insure all **private passenger, farm, utility autos** and **trailers** owned by **you** on the date of such acquisition and **you** request us to add it to the policy within 30 days afterward;

---

[3] The only vehicles described in the Policy for which premium charges are specified are a 2002 Chevrolet bearing VIN no. 2GCEC19W721154321 and a 1984 Winnebago bearing VIN no. 1GBKP37W923303627.

>             (c) a **temporary substitute auto**

(Policy 7.)

Section I, the Liability Coverages portion of the Policy, as amended on June 15, 2006, provides in pertinent part:

> Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:
>
> 1. bodily injury, sustained by a person, or
>
> 2. damage to or destruction of property,
>
> arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

(Auto. Policy Amend. 1.)  As set forth under the **"DEFINITIONS"** heading of Section I,

> 5. **"Non-owned auto"** means an automobile or **trailer** not owned by or furnished for the regular use of either **you** or a **relative**, other than a **temporary substitute auto**. An auto rented or leased for more than 30 days will be considered as furnished for regular use.
>
> 6. **"Owned auto"** means:
>    (a)  a vehicle described in this policy for which a premium charge is shown for these coverages[4];
>    (b)  a **trailer** owned by **you**;
>    (c) **a private passenger**, **farm** or **utility auto**, ownership of which **you** acquire during the policy period, if

---

[4] The only vehicles described in the Policy for which premium charges are shown are a 2002 Chevrolet bearing VIN no. 2GCEC19W721154321 and a 1984 Winnebago bearing VIN no. 1GBKP37W923303627.

7

>                    (i)  it replaces an **owned
>                    auto** as defined in (a)
>                    above; or
>                    (ii)  we  insure  all
>                    **private passenger, farm**
>                    and **utility autos** owned
>                    by **you** on the date of the
>                    acquisition, and **you** ask
>                    us to add it to the
>                    policy no more than 30
>                    days later;
>               (d) a **temporary substitute auto**.

(Policy 3.)

### D. Application of Law

In Mississippi, "'[i]nsurance policies are contracts, and as such, they are to be enforced according to their provisions . . . .'" Anglin v. Gulf Guar. Life Ins. Co., 956 So. 2d 853, 859 (Miss. 2007) (quoting Noxubee County Sch. Dist. v. United Nat'l Ins. Co., 883 So. 2d 1159, 1166 (Miss. 2004)). "Generally, under Mississippi law, when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." Id. However, "ambiguous and unclear policy language must be resolved in favor of the non-drafting party -- the insured. Further, provisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer." Id. (citations omitted). The Court is neither aware of nor advised of any ambiguous language in the Policy and will therefore apply its terms as they are written.

The time at which Saltou acquired ownership of the 2003 Ford

Focus is the dispositive issue in this case.  The Mississippi Motor Vehicle and Manufactured Housing Title Law, Miss. Code Ann. §§ 63-21-1 — 63-21-77 (Rev. 2004 & Supp. 2007), is highly relevant to and instructive upon this matter.  Section 63-21-9 provides that "every owner[5] of a motor vehicle as defined in this chapter, which is in this state and which is manufactured or assembled after July 1, 1969, or which is the subject of first sale for use after July 1, 1969 . . . shall make application to the State Tax Commission for a certificate of title . . . ."

Once an owner of a vehicle has submitted and had an application for a certificate of title approved, the "certificate of title issued by the State Tax Commission is prima facie evidence of the facts appearing on it."  Miss. Code Ann. § 63-21-19.  As the plaintiff points out, a certificate of title for the 2003 Ford Focus was issued on January 11, 2005, naming Don Saltou and his stepdaughter, Wendy Koloski, as owners.  (Mot. Summ. J. Ex. C.)  Therefore, the certificate of title creates a rebuttable presumption that Don Saltou was a co-owner of the vehicle as early as January 2005.

Assuming this presumption is not rebutted, then under both Section I and Section III[6] of the Policy the 2003 Ford Focus would

---

[5] The term "owner" is defined as "a person or persons holding the legal title of a vehicle . . . ."  Miss. Code. Ann. § 63-21-5(o).

[6] The wordings of the "non-owned auto" definitions in Sections I and III are slightly yet immaterially different.

9

not qualify as a "non-owned auto," for in order to be a non-owned auto, a private passenger auto must not be owned by the insured (Saltou). Therefore, there would be neither collision loss coverage nor liability and lawsuit defense coverage afforded by GEICO for the 2003 Ford Focus as a non-owned auto.[7]

Similarly, under Sections I and III[8] the subject vehicle would only qualify as an "owned auto" for which coverage was afforded by GEICO if: a "vehicle described in this policy for which a specific premium charge indicates there is coverage;" the vehicle is a "temporary substitute auto;" Saltou acquired ownership of the 2003 Ford Focus during the policy period and it replaced an owned auto; or if GEICO insured all private passenger vehicles owned by Saltou on the date he acquired ownership of the Focus and he requested that the vehicle be added to the Policy within thirty days thereafter. (Policy 7.) As already noted, only a 2002 Chevrolet and a 1984 Winnebago were accompanied by a specific premium charge in the Policy[9], and the defendants do not assert that the Focus was

---

[7] Even if the presumption were rebutted, the defendants represent that Saltou became the owner of the Focus on or about June 20, 2006. (Defs.' Memo. 4.) Therefore, there is no plausible basis on which coverage obligations for the Focus <u>as a non-owned auto</u> could lie for GEICO because the defendants admit that, four days before the subject accident, Saltou was the owner of the Focus.

[8] The wordings of the "owned auto" definitions in Sections I and III are slightly yet immaterially different.

[9] Saltou stated in his deposition testimony that he contacted GEICO by telephone a few days before the accident in order to add

a temporary substitute auto or the replacement for an owned auto. Therefore, the basis for coverage of the Focus as an owned auto urged by the defendants is that because Saltou acquired ownership of the Focus on or about June 20, 2006, and since he requested that it be added to the Policy less than thirty days later on July 5, 2006, the Focus was retroactively covered by the GEICO policy on the date of the accident — June 24, 2006.  However, unless the presumption that Saltou was a co-owner of the Focus a year and one-half earlier in January 2005 is rebutted, this argument is clearly without merit.

In an effort to rebut the certificate of title presumption that Saltou was a co-owner of the 2003 Ford Focus as early as January 11, 2005, the defendants rely upon <u>Wille v. Courtney</u>, 943 So. 2d 515 (La. App. 5th Cir. 2006).  In <u>Wille</u>, the court found that a vehicle was not covered under the automobile policy of an

---

the 2003 Ford Focus to the Policy.  (Saltou Depo. 20.)  Saltou averred that he spoke with a lady who requested the VIN number, color, make, and model of the vehicle. (Saltou Depo. 22.)  Because he did not have the VIN number, the lady supposedly stated she would call him back to obtain it but never did. (Saltou Depo. 22.)
    Saltou has not presented any evidence in support of his naked assertion that such a conversation took place.  On the other hand, the phone logs and policy records do not reflect such a call ever occurred; rather, the evidence put forward by GEICO indicates that the first call made by Saltou to add the Focus to the Policy was on July 5, 2006.  (Mot. Summ. J. Exs. F, G, H.)
    Because Saltou has not come forward with more than a scintilla of evidence supporting his contention that he added the Focus to the Policy as an owned auto before the accident, summary judgment is appropriate for GEICO on this basis.

11

insured because he had no ownership interest in the vehicle when it was acquired.  The Louisiana appellate court reached this conclusion despite evidence showing that the insured had co-signed with his daughter for financing the purchase of the car and the registration/title documents listed him as the owner of the vehicle.  In holding that the insured's actions amounted to a manual gift of a corporeal moveable[10] under Louisiana law, the panel noted that the insured had signed the financing and title application papers solely to permit the car dealership to extend credit to his daughter; furthermore, because he gave full possession, use, and ownership of the car to his daughter, the insured displayed no intention of retaining any ownership interest in the vehicle.

Analogizing to Wille, the defendants assert that Saltou was not a co-owner of the Focus prior to June 20, 2006, because he co-signed with his step-daughter only to help her obtain financing on a vehicle that was for her sole use.  According to the defendants, Saltou's actions amounted to a manual donation of the vehicle to his step-daughter because he did not believe he possessed any ownership interest in the Focus at the time of purchase and did not

---

[10] According to Touchet v. Guidry, 550 So. 2d 308, 313 (La. App. 3d Cir. 1989), cited by the Wille court, through the manual gift of a corporeal moveable, title to a vehicle may be transferred between parties pursuant to the Louisiana Civil Code even though they have not complied with the statutory Vehicle Certificate of Title Law.

make any payments on the car prior to his taking possession of the vehicle on June 20, 2006.

The Court is not persuaded by the defendants' analogy to <u>Wille</u>.  The applicable law in this matter is Mississippi's substantive law rather than Louisiana's.  The Supreme Court of Mississippi has characterized the Mississippi Motor Vehicle and Manufactured Housing Title Law as "a uniform title system, one which at any point in time may allow it to be determined with certainty who is the owner[]" of a motor vehicle.  <u>Hicks v. Thomas</u>, 516 So. 2d 1344, 1346 (Miss. 1987).

Under Mississippi Code Annotated § 63-21-15(1), "[t]he application for the certificate of title of a vehicle . . . shall be made <u>by the owner</u> to a designated agent . . . ."  (emphasis added).  Thus when he applied for a certificate of title on the Focus, Saltou was clearly acting under the belief that he was an owner of the vehicle possessing legal title therein.  If the facts that Saltou may have merely intended to benefit his daughter by co-signing the financing contract, that Saltou did not intend to be or regard himself as the owner of the Focus, that he did not posses or make any payments on the Focus until June 2006, and that the vehicle was purchased for the sole use of his stepdaughter were allowed to vitiate the fact that he applied for a certificate of title as an owner of the 2003 Ford Focus and was declared to be a co-owner on the January 11, 2005, Certificate of Title, the goals

of ensuring uniformity and ease of determining who owns a motor vehicle under Mississippi's statutory scheme would be severely undermined.

While Louisiana may recognize a manual gift of a corporeal moveable as an exception to the formalities of the statutory scheme for transfer of one's legal interest in a vehicle, Mississippi law does not recognize the same or a similar exception.  To the contrary, Mississippi Code Annotated § 63-21-31(1) provides as follows:

> If an owner transfers his interest in a vehicle, manufactured home or mobile home, other than by the creation of a security interest, he shall, at the time of the delivery of the vehicle, manufactured home or mobile home, execute an assignment and warranty of title to the transferee in the space provided therefor on the certificate or as the State Tax Commission prescribes, and cause the certificate and assignment to be mailed or delivered to the transferee.

Generally speaking, "a transfer by an owner is not effective until the provisions of this section have been complied with." MISS. CODE ANN. § 63-21-31(5).  Thus Mississippi law is clear that absent one of the few narrow exceptions to the Mississippi Motor Vehicle and Manufactured Housing Title Law, none of which are applicable in this case, the only way a party may acquire title to a vehicle is "through obtaining delivery of an endorsed certificate of title from his transferor. . . ."  Hicks, 516 So. 2d at 1348.

Unlike the insured in Wille who transferred his interest in

the subject vehicle pursuant to an exception to the applicable Louisiana statutory scheme, under Mississippi law Saltou could not have transferred his ownership interest in the 2003 Ford Focus to his stepdaughter absent full compliance with § 63-21-31.  There is no evidence of any such compliance by Saltou in this case. Therefore, the presumption that Saltou acquired ownership of the Focus at least by January 11, 2005, has not been rebutted.[11]

### IV. CONCLUSION & ORDER

Based upon the foregoing analysis and authorities, the Court finds that no genuine issue of material fact exists in this case and as to whether on June 24, 2006, the 2003 Ford Focus was an "owned auto" or "non-owned auto" under the Policy for which collision and liability coverage was afforded and a duty to defend owed to Saltou.  For this reason, the plaintiff is entitled to a judgment as a matter of law.  Accordingly,

---

[11] Assuming arguendo that Saltou was not a co-owner of the Focus in January 2005 and that Koloski was the sole owner, the operative facts for determining the genesis of Saltou's ownership of the 2003 Ford Focus are, according to the defendants, when he took possession of, began driving, and intended to take ownership of the vehicle — all on June 20, 2006.
However, Mississippi's statutory scheme requires the delivery of an endorsed certificate of title from the transferor to the transferee before an interest in a vehicle can be transferred. MISS. CODE ANN. § 63-21-31.  No evidence has been presented showing that Koloski ever executed and delivered an assignment of title to Saltou on the 2003 Ford Focus's certificate of title.  Therefore, it makes no difference whether and when Saltou took possession of, began driving, and intended to take ownership of the 2003 Ford Focus on June 20, 2006, because these events are not germane to determining when a transferee obtains legal title of a vehicle.

**IT IS HEREBY ORDERED** that the plaintiff's Motion for Summary Judgment [**docket entry no. 19**] is **GRANTED**.

**SO ORDERED,** this the   11th   day of March 2008.

                                                s/ David Bramlette  
                                         **UNITED STATES DISTRICT JUDGE**